**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| **LOUIS PELLEGRINO, et al.,** | : | **CIVIL ACTION** |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | **No. 12-2065** |
| | : | |
| **STATE FARM FIRE AND CASUALTY** | : | |
| **COMPANY,  individually and on behalf of** | : | |
| **all other affiliated insurance companies,** | : | |
| | : | |
| **Defendant.** | : | |

_____:

**Goldberg, J.**                                                                                        **July 29, 2013**

## MEMORANDUM OPINION

This case involves a somewhat atypical property insurance coverage dispute.  The parties agree that a portion of both the siding and roof of Plaintiffs' home suffered storm damage.  The parties also agree that such damage constituted a covered loss under the controlling insurance policy.  Plaintiffs Louis and Christine Pellegrino insist, however, that they are entitled to an actual cash value payment for both the damaged and undamaged portions of the roof and siding because State Farm determined that it was unable to replace the damaged property with "similar construction."

Plaintiffs commenced this case as a class action against Defendant State Farm Fire and Casualty Company ("State Farm"), alleging that State Farm has developed a scheme to deprive its insureds of money owed to them under their homeowner's insurance policies.  In addition to demanding the depreciated value of the entire roof and all siding, Plaintiffs assert that State Farm's practice of categorizing certain repairs as "Paid When Incurred" ("PWI") constitutes a breach of contract (Count I), bad faith (Count II) and a violation of the Unfair Trade Practices

1

and Consumer Protection Law's catch-all provision, 73 P.S. 201-2(4)(xxi) ("UTPCPL") (Count III).

Before the Court is State Farm's motion to dismiss the amended class action complaint for failure to state a claim upon which relief can be granted. Oral argument on the motion was held on May 30, 2013, wherein several concessions were made and the parties' positions were clarified. For the reasons stated below, State Farm's motion will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

The amended complaint alleges that on March 10, 2011, Plaintiffs' home, located at 410 Tower Road, Sellersville, Pennsylvania, suffered storm damage. (Am. Compl. ¶ 11; Pls.' Am. Resp., Doc. No. 12, p. 2.) At the time the damage occurred, Plaintiffs' home was covered by a State Farm homeowner's insurance policy. Plaintiffs submitted a claim for damages and State Farm determined that the damage was a "covered loss" under the terms and conditions of the policy. (Am. Compl. ¶¶ 11, 13-14.)

Plaintiffs hired Alliance Adjustment Group to compile an estimate of the cost to repair the damage. That estimate valued the total cost of repairs at $80,443.13, which included the total replacement of the home's roof and siding. (Id. at Ex. B; Pl.'s Am. Resp., p. 3.) State Farm obtained its own estimate, which concluded that covered damage occurred to small portions of the siding on three of the four sides of the house, as well as approximately thirty square feet of the roof. (Am. Compl., Ex. C.) State Farm's estimate listed the "Total Amount of Claim If Incurred" as $43,711.21. This estimate was divided into two categories: (1) $17,091.58 to be

---

[1] When deciding a motion to dismiss for failure to state a claim brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a district court must assume the veracity of all well-pleaded facts found in the complaint. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). We assume that all facts found in the amended complaint are true, and to the extent any facts from outside the amended complaint are recited, they are included for informational purposes only. See Ethypharm S.A. France v. Abbott Labs., 707 F.3d 223, 225 n.1 (3d Cir. 2013).

paid to Plaintiffs up front as a net actual cash value payment;[2] and (2) $26,619.63 to be "paid when incurred" by Plaintiffs.  (Id. at Ex. C, p. 3.)

Although the term "paid when incurred" does not appear in the homeowner's policy, the State Farm estimate defines it as follows:

> Paid When Incurred (PWI) items refer to items which may not be necessary in the repair of your property damaged by a covered loss.  If incurred, or contracted to be completed, reimbursement of reasonable costs will be made up to the maximum amounts identified as eligible for PWI in this estimate.

(Id.)  Plaintiffs acknowledge that the roofing and siding amounts designated as PWI are amounts that would go toward the replacement of undamaged portions of siding and roofing.[3]  Although State Farm asserts that it is not contractually obligated to pay for any undamaged portion of the property, State Farm has stated that it stands ready and willing to pay Plaintiffs for these PWI costs, as a matter of customer service, once Plaintiffs provide proof that they have contracted for the replacement of these undamaged portions of the home.  (Hrg. Tr., pp. 10-11, 15.)

Plaintiffs respond that they are not obligated to contract for replacement of the siding and roof.  Instead, Plaintiffs posit that under the language of the insurance policy and under Pennsylvania law, State Farm is required to pay them the actual cash value of the entire roof and siding because "State Farm determined that it could not replace the damaged portion of

---

[2] While the State Farm policy does not define "actual cash value," the Superior Court of Pennsylvania has interpreted identical language from a State Farm replacement cost policy, and determined that "[t]he only interpretation of the phrase 'actual cash value' . . . that makes sense is one that includes depreciation deductions."  Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038, 1050 (Pa. Super. Ct. 2003).  The parties agree that an actual cash value payment would include deductions for depreciation.  (Hrg. Tr., pp. 12-13.)

[3] We recognize, as noted numerous times in State Farm's motion, that the PWI designations in State Farm's estimate relating to the roof are roof tear-off costs, not replacement costs for undamaged shingles.  State Farm maintains that these roof tear-off costs would not be necessary if Plaintiff decided to replace the damaged shingles through an overlay technique.  (State Farm's Mot., p. 3.)  However, Plaintiff's amended complaint maintains that the PWI designations related to the roof are required to be paid due to matching considerations.  (See Am. Compl. ¶ 21.)

[P]laintiffs' dwelling with products and/or materials that matched the color, size, and texture of the undamaged portions of [P]laintiffs' dwelling."  Plaintiffs urge that State Farm's "scheme" of unilaterally designating the amounts to replace undamaged portions of roofing and siding as PWI when State Farm determines it is unable to match these materials, constitutes a breach of contract, bad faith and violation of the UTPCPL.  (Am. Compl. ¶¶ 20-21, 23.)

The pertinent policy provision states:

**A1 – Replacement Cost Loss Settlement – Similar Construction**

a.  We will pay the cost to repair or replace with similar construction and for the same use on the premises shown in the **Declarations**, the damaged part of the property covered under **SECTION I – COVERAGES, COVERAGE A – DWELLING**, except for wood fences, subject to the following:

(1) until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property, up to the applicable limit of liability shown in the **Declarations**, not to exceed the cost to repair or replace the damaged part of the property;

(2) when the repair or replacement is actually completed, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of the property, or an amount up to the applicable limit of liability shown in the **Declarations**, whichever is less . . . ;

(3) to receive any additional payments on a replacement cost basis, you must complete the actual repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed[.]

(Id. at Ex. A, p. 11.)  Plaintiffs rely heavily on the use of the term "similar construction" in support of their "matching" argument, insisting that courts have interpreted this language to mean that an insurance company must replace undamaged portions of structures when it is unable to replace the damaged portion with similar materials.

Plaintiffs further clarified their position at oral argument, positing that the provisions of the policy recited above allow them to choose to receive only an actual cash value payment for

the entire roof and all siding, pursuant to subparagraph (1), and decline to "repair or replace," as provided under subparagraphs (2) and (3).  Plaintiffs' counsel stated that Plaintiffs have chosen to receive only the actual cash value coverage, and have declined replacement coverage.  Plaintiffs assert that Pennsylvania law supports their position, requiring "matching" when similar materials cannot be located.  Anything less, they argue, would not give them the benefit of the coverage provided.  (Hrg. Tr., pp. 11-13, 20.)

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  The plausibility standard requires more than a "sheer possibility that a defendant has acted unlawfully."  <u>Id.</u>  To determine the sufficiency of a complaint under <u>Twombly</u> and <u>Iqbal</u>, a court must take the following three steps: (1) the court must "tak[e] note of the elements a plaintiff must plead to state a claim;" (2) the court should identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth;" and (3) "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."  <u>Burtch v. Milberg Factors, Inc.</u>, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).

## III.   <u>ANALYSIS</u>

As noted above, Plaintiffs demand the value of replacement of the entire roof and shingles, less depreciation, even though they acknowledge that: 1) only portions of these areas were damaged; and 2) they do not presently intend to replace these areas.  State Farm responds that the policy only requires that it pay the actual cash value of the damaged portions of

Plaintiffs' dwelling.   State Farm urges that Pennsylvania law does not require payment for undamaged property, or "matching," as Plaintiffs suggest.   Nonetheless, State Farm has offered to pay for the replacement of the entire roof and siding once Plaintiffs present a contract to have that work completed.   State Farm emphasizes that this offer was not made due to a legal obligation, but rather, was made as a matter of customer service.

**A.  Breach of Contract**

In Count I of the amended complaint, Plaintiffs allege that State Farm's refusal to pay the actual cash value of the entire roof and siding—damaged and undamaged—constitutes a breach of contract.

"To properly allege a breach of contract action under Pennsylvania law, a plaintiff must plead: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages."   Caroselli, Sr. v. Allstate Property and Cas. Ins. Co., 2010 WL 3239356, at *4 (E.D. Pa. Aug. 16, 2010) (citing CoreStates Bank, N.A. v. Cutillo, 723 A.2d 1053, 1058 (Pa. Super. Ct. 1999)).   Under Pennsylvania law, "the 'interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'"   Nationwide Mut. Ins. Co. v. CPB Intern., Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)).   At issue, here, is whether State Farm has a contractual duty to provide its insureds with the cost to repair or replace undamaged portions of siding and roofing when similar materials are not available, as part of an actual cash value payment.

1.  The Language of the Policy

A court must first look to the language of the policy to determine the intent of the parties. Id. (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)).   "[W]hen

construing a policy, '[w]ords of common usage . . . are to be construed in their natural, plain and ordinary sense.'" Kane v. State Farm Fire & Cas. Co., 841 A.2d 1038, 1042 (Pa. Super. Ct. 2003) (quoting Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999)). When the language of a policy is clear and unambiguous, the court must give effect to that language. CPB Intern., Inc., 562 F.3d at 595 (quoting Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006)). When a provision is ambiguous, however, the Court is to construe that language in favor of the insured. Id. "Contractual language is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Greene v. United Servs. Auto. Ass'n, 936 A.2d 1178, 1185 (Pa. Super. Ct. 2007) (quoting 401 Fourth St., Inc. v. Investors Ins. Grp., 879 A.2d 166, 170 (Pa. 2005)).

With this precedent in mind, we conclude that the policy provisions at issue are unambiguous. The contract clearly states that State Farm will "pay the cost to repair or replace with similar construction . . . the damaged part of the property." (Am. Compl., Ex. A, p. 11 (emphasis added).) The policy then articulates further conditions, stating, "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss of the damaged part of the property." (Id. (emphasis added).) The import of this language is clear— State Farm is only contractually obligated to make an actual cash value payment for property that is damaged. Indeed, nowhere in the policy does it state that if only a portion of property is damaged, and replacement of the damaged portion will not match the undamaged portion, State Farm will be obligated to replace the entire portion of that property.

In a case similar to the present action, Greene v. United Services Automobile Association, 936 A.2d 1178 (Pa. Super. Ct. 2007), the Superior Court of Pennsylvania

considered the meaning of "damaged part of the property."  In <u>Greene</u>, the insureds argued that, where a small portion of the roof had been damaged and similar shingles were no longer available, a provision calling for repair or replacement of the damaged part of the property required replacing the entire roof.  The Superior Court found, as we have, that the term "damaged part of the property" is unambiguous, and characterized the insureds' "interpretation of the policy language . . . [as] unreasonable and absurd."  <u>Greene</u>, 936 A.2d at 1186.

Here, the damaged part of Plaintiffs' property consists of, at most, a small portion of the shingles and siding panels and perhaps the area immediately surrounding these areas.  <u>See id.</u> (finding that where a few shingles were damaged, "the damaged part of the property" could at the very most mean one slope of a multi-sloped roof).  Plaintiffs agree that the actual cash value payment of $17,091.58 that they received adequately compensates them for the shingles and siding that actually suffered damage.  (<u>See</u> Pls.' Resp. to Email, Doc. No. 21, ¶ 1.)

Subparagraph 2 of the policy states that "<u>when the repair or replacement is actually completed</u>, [State Farm] will pay the covered additional amount you actually and necessarily spend to repair or replace the <u>damaged</u> part of the property."  (Am. Compl., Ex. A, p. 11 (emphasis added).)  Any additional costs, "matching" or otherwise, to "repair or replace with similar construction" would appear to be a second step, to be paid once repair or replacement is completed.  As explained previously, repair or replacement has not occurred.  Still, Plaintiffs insist that because they have elected not to replace the damage, the "matching" costs are presently due as part of the actual cash value payment.  Plaintiffs urge that Pennsylvania law supports this position.

2.  <u>Case Law on "Matching"</u>

Plaintiffs rely primarily upon <u>Metz v. Travelers Fire Insurance Company, Hartford, Connecticut</u>, 49 A.2d 711 (1946) and <u>Collins v. Allstate Insurance Company</u>, 2009 WL 4729901 (E.D. Pa. Dec. 10, 2009) to support their position.  In <u>Metz</u>, the Supreme Court of Pennsylvania reviewed a jury award in favor of an insured whose roof had caved in, and considered whether it was error for the jury to award damages in excess of the cost to repair or replace the roof with material of the same kind and quality.  Testimony at trial indicated that it was impossible to obtain substantially similar materials, and it "became necessary for the insured in the replacement of the building to use steel columns for supporting the roof."  <u>Id.</u> at 713.  The Court determined that the jury award was not error, stating that "[i]f part of the building destroyed cannot be replaced with material of like kind and quality, then it should be substantially duplicated within the meaning of the policy."  <u>Id.</u>  The <u>Metz</u> opinion provides no further insight on the definition of "substantially duplicated," nor does the Court provide any guidance on the facts at issue here—where insureds are seeking immediate payment for full replacement under a policy that provides for payment in two parts.  Further, <u>Metz</u> dealt with repairs that were necessary to stabilize the covered property's roof, whereas here, the additional costs sought are for the replacement of undamaged portions of property for purely aesthetic purposes.  For all of these reasons, we conclude that <u>Metz</u> does not advance Plaintiffs' position.

In <u>Collins</u>, the insured sought coverage for replacement of his entire roof, although only small patches were damaged.  Testimony had been presented that there were no substantially similar slate tiles currently available on the market, and thus full replacement was needed to satisfy the contract's requirement to replace with materials of "like kind and quality" or "equivalent construction."  The insurance company refused to cover replacement of the entire

roof, insisting that full replacement was not required under the contract.  Collins, 2009 WL 4729901, at *2.  The district court denied the insurance company's motion for summary judgment, citing to Metz.  The court found that testimony of a lack of similar replacement materials available on the market was sufficient to create a genuine issue of material fact as to whether the insurance company breached the contract by refusing to replace the plaintiff's entire roof.  Id. at *6.  While we acknowledge that the Collins decision generally tends to support Plaintiffs' position, that court did not, as Plaintiffs urge, directly and definitively state that as a matter of law, an insurer must provide "matching" replacement for an entire section of property.

State Farm responds to the precedent cited by Plaintiffs by noting that Greene sets forth the clearest pronouncement of Pennsylvania law.  In Greene, the Superior Court expressed significant skepticism as to whether a contractual provision calling for replacement with "like construction" would require replacement of an entire roof due to matching concerns.  Greene, 936 A.2d at 1186-87, n. 4.  In fairness to Plaintiff, however, we note that the Greene court never reached the ultimate question of whether matching was required because evidence presented at trial "revealed that shingles of similar color and texture were available."  Id. at 1186.  We thus conclude that Metz, Collins and Greene do not address the exact situation before this Court.

### 3.  The Timing and Contingency of the Payments

Although the parties have devoted the majority of their briefs to debating whether "matching" is required, that question is for all practical purposes moot because State Farm has offered to pay the matching costs, as a customer relations gesture.  Thus, the real question we must decide is whether the delayed timing of the payment, contingent upon Plaintiffs contracting to complete the work as set forth in subparagraphs (2) and (3) of the policy, is unlawful.

The cases discussed supra provide little guidance on that specific issue.  However, the Pennsylvania Superior Court has previously considered the implications of an insured with a "replacement cost" insurance contract seeking an actual cash value payment.  In Kane v. State Farm Fire and Casualty Company, 841 A.2d 1038 (Pa. Super. Ct. 2003), where the policy's "Loss Settlement" language was identical to that found in this case, the insured challenged the trial court's holding that when a replacement cost insurance contract does not define actual cash value, the actual cash value payment may include deductions for depreciation.  The court found that in a situation where only the timing of the payment was at issue—that is, the insured would receive an actual cash value payment initially, and only needed to contract for the damaged property to be repaired or replaced in order to receive the additional replacement cost of the damaged property—the insurer may deduct depreciation from an actual cash value payment.  Id. at 1049-50.   In so holding, the court noted that where the insured could easily receive replacement cost by contracting to complete the work, "there [wa]s no concern . . . that the insureds w[ould] not be made whole."  Id. at 1050.  We find that the reasoning articulated in Kane justifies State Farm's bifurcated payment schedule.

In reaching this conclusion, it is worth emphasizing that "insurance policies are based on principles of indemnity rather than enrichment," and "[their] object is not to permit a gain by the insured but only to compensate him for a loss[.]  [I]t is obvious that [an insured] cannot recover insurance in an amount greater than the loss which he sustained."  Burton v. Republic Ins. Co., 845 A.2d 889, 896 (Pa. Super. Ct. 2004); Ins. Co. of N. Am. v. Alberstadt, 119 A.2d 83, 86 (Pa. 1956).

We also note that Pennsylvania precedent on the issue of "matching" is anything but clear.  However, we recognize that those courts that have found that matching may be necessary,

have expressed concern that a plaintiff may not be made whole if the repaired or replaced portions of the insured's property do not match the undamaged portions.  See Collins, 2009 WL 4729901, at *6 (relying on testimony that failure to match would result in a different appearance and not place the plaintiffs in the position they were in prior to the loss in denying summary judgment).  In such circumstances, an insured's property could potentially be worth less than before the covered loss.  That concern does not arise from the facts in the instant case, where an insured seeks only actual cash value coverage and, at least for now, has chosen not to replace the damaged portions of his property.  Unless and until replacement is made, there is no concern that two drastically different types of roof shingles or different siding will detrimentally affect the value of the home.

In sum, Plaintiffs have chosen not to repair or replace the damage to their roof and siding. They have received the depreciated value of the damaged portions of their home, in compliance with their insurance policy.  If they wish to repair or replace the damaged portions, State Farm stands ready and willing to pay the amounts designated as PWI—that is, the cost to replace all siding on Plaintiffs' home and additional replacement costs for the roof.  As in Kane, Plaintiffs need only follow the procedures laid out in the contract to receive the additional replacement costs.  To require State Farm to pay matching costs to insureds who have expressed no intention of repairing or replacing the damaged property would not indemnify the insureds for a loss, but would instead result in a windfall.[4]

We therefore find that there is no duty upon State Farm, either within the contract or derived from Pennsylvania law, to provide its insureds with matching costs on an actual cash

---

[4] We also observe that adopting Plaintiffs' "matching" theory could lead to absurd results.  For example, requiring an insurer to replace all 5000 square feet of siding for the outside of a property where only a few hundred feet were actually damaged does not seem consistent with the concept of placing an insured back in the same position they were before a covered loss occurred.

value basis prior to repair or replacement.  While we express a healthy amount of skepticism regarding Plaintiffs' "matching" theory, we need not determine whether Pennsylvania law requires matching upon replacement, as State Farm has offered to pay the matching costs once such work is contracted to be completed.  Accordingly, we find that Plaintiffs have failed to state a claim for breach of contract.

### B.  Bad Faith

In Count II of the amended complaint, Plaintiffs allege that State Farm engaged in bad faith because the "actions and practice of withholding insurance proceeds on a 'Paid When Incurred' ('PWI') basis was and is frivolous and unfounded . . . [and] [State Farm] knew of or recklessly disregarded its lack of reasonable basis in withholding such benefits."   (Am. Compl. ¶ 48.)  "In order to state a claim under Pennsylvania's bad faith statute, a plaintiff must allege facts showing that (1) the insurer lacked a reasonable basis for denying benefits; and (2) that the insurer knew or recklessly disregarded its lack of reasonable basis."  Clark v. Progressive Advanced Ins. Co., 2013 WL 1787566, at *1 (E.D. Pa. Apr. 26, 2013) (quoting Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 233 (3d Cir. 1997)) (quotation marks omitted).

The only behavior Plaintiffs point to as being "in bad faith" was the withholding of PWI payments, which Plaintiffs argued violated the terms of the insurance policy.  The success of Plaintiffs' bad faith claim is contingent upon a finding that State Farm's PWI procedure constitutes a breach of contract.  See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 751 n.9 (3d Cir. 1999) (finding that where the court has determined that the insurer did not breach a contractual duty, there was good cause for the insurer to deny coverage).  Because we find that designating these proceeds as PWI does not breach the insurance policy, Plaintiffs' claim for bad faith also fails.

### C.  Violation of the UTPCPL

In Count III, the amended complaint alleges that State Farm intended to deceive Plaintiffs "into believing that defendant was permitted under the polic[y] to withhold insurance proceeds on a 'Paid When Incurred' ('PWI') basis."  (Am. Compl. ¶ 53.)

The UTPCPL "is designed to protect the public from fraud and deceptive business practices."  Belmont v. MB Inv. Partners, Inc., 708 F.3d 470, 497 (3d Cir. 2013) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 564 (3d Cir. 2008)).   The catch-all provision, which Plaintiffs allege has been violated, creates a private right of action against one "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."   73 P.S. § 201-2(4)(xxi).   To state a claim under the UTPCPL, a plaintiff must show: (1) deceptive conduct; (2) an ascertainable loss; (3) justifiable reliance on the defendant's wrongful conduct or misrepresentations; and (4) that such reliance caused an injury.  Caroselli, Sr. v. Allstate Property & Cas. Ins. Co., 2010 WL 3239356, at *7 (E.D. Pa. Aug. 16, 2010).

Plaintiffs have failed to allege facts that would establish deceptive conduct.  "It is not deceptive for an insurer to adhere to the unambiguous language of a policy and pay claims in accordance with those terms."  Id. at *8.  Further, the amended complaint fails to allege that Plaintiffs justifiably relied upon any alleged misrepresentation.  Therefore, we find that Plaintiffs have failed to state a claim for a violation of the UTPCPL.

### IV.   **CONCLUSION**

State Farm's practice of withholding matching costs until the insured has contracted for repair or replacement is consistent with the terms of the insurance policy, as well as Pennsylvania law.   Because Plaintiffs' bad faith claim is contingent upon Plaintiffs' ability to

14

state a claim for breach of contract, their bad faith claim also fails.  Finally, as Plaintiffs have not

sufficiently pled deceptive conduct, nor justifiable reliance, Plaintiffs have failed to state a claim

for violation of the UTPCPL.  State Farm's motion to dismiss will be granted.[5]

       Our Order follows.

---

[5] Because we find that any further amendment to the complaint would be futile, Plaintiffs will not
be granted leave to amend their complaint.  See Foman v. Davis, 371 U.S. 178, 182 (1962).